357 EAST SEVENTY-SIXTH STREET CORPORATION, Respondent, *v.* KNICKERBOCKER ICE COMPANY, Appellant.

First Department, March 10, 1933.

*Theo. J. Miller* of counsel [*John J. O'Brien* with him on the brief; *Dunnington, Gregg & Church,* attorneys], for the appellant.

*Sydney M. Heimann* of counsel [*Jacob I. Smith* with him on the brief; *Sydney M. Heimann,* attorney], for the respondent.

MARTIN, J. This litigation involves the plaintiff's right to a perpetual easement in a party wall. Plaintiff seeks to recover damages because the defendant took down the party wall between the adjoining premises owned by both parties hereto, the line of title between the respective parcels running lengthwise through the center of the wall.

The complaint sets forth that the plaintiff was the owner of a tenement house at No. 407 East Sixtieth street, borough of Manhattan, and that the defendant was the owner of a tenement house at No. 409 East Sixtieth street, which adjoins to the east. The buildings were connected by a sixteen-inch party wall, built eight inches on plaintiff's and eight inches on defendant's land.

In 1929 the plaintiff demolished its building, but in doing so left the party wall standing. It filed with the building department plans for a garage to be erected upon its premises, showing the intended use of the party wall as a supporting and retaining wall. In taking down its building, the plaintiff left the entire party wall standing, and until its subsequent demolition by the defendant, it remained intact.

The plaintiff states that the wall was left in a proper and suitable condition for continued use as a party wall and for use as a supporting and retaining wall for plaintiff's new building intended to be built and used as a garage.

After the demolition by plaintiff of its tenement house and prior to the erection of the proposed garage, the defendant decided to demolish its tenement house and erect an ice plant. Thereupon, the defendant, with full knowledge of the facts and over the objection and protest of the plaintiff, took down its building including the entire party wall.

The plaintiff states that the wall was built by a predecessor in title of both parties hereto, for the support of the buildings then upon or thereafter to be erected upon the respective parcels, and that the plaintiff had title to that portion of the wall situated upon its own land as well as an easement in and to the defendant's land and the other half of the wall resting thereon, for the support of the buildings then upon, or any buildings thereafter to be erected upon its own land.

It is the plaintiff's contention that it had a property interest of substantial value in the wall, for the destruction of which it is entitled to redress, and also contends that the cases cited by the appellant have no application and that the decision of the court at Special Term is correct.

The defendant contends that the plaintiff's rights with respect to the wall depended upon the continued existence of plaintiff's building, and were terminated with the taking down of that building regardless of the fact that the wall itself remained fit and suitable for future use by the plaintiff, and irrespective of the fact that the plaintiff had full legal title and ownership and not merely an easement to that portion of the wall which rested on its own land.

The court at Special Term rejected defendant's theory that the wall must be unsafe and useless or it cannot be interfered with, but held that the plaintiff had a right to insist on the party wall remaining intact.

The right to the use of the party wall extended only to the building in existence when the easement was created. When both buildings were demolished, the necessity for the easement ceased.

In *Heartt* v. *Kruger* (56 N. Y. Super. Ct. [24 J. & S.] 382) the court said: " Can it, however, be said that because the parties intended that the buildings on the property at the time the grant or conveyance was made should have the support of the division wall between the houses, that it was also intended to grant a perpetual easement for a common or party wall, so that after the buildings on the property were destroyed, the strip of land on which the party wall had been built should be subject to an easement for the support of a wall for other or different buildings entirely disconnected with the buildings to supply which the easement was granted. It would appear that this was extending an implied grant much further

than it is extended in other cases. Thus, when a right of way by necessity is granted, such a right is only commensurate with the existence of the necessity upon which the implied grant is founded, and when such necessity ceases the right of way also terminates. [*N. Y. Life Ins. & Trust Co.* v. *Milnor*, 1 Barb. Ch. 362.] This case is a good illustration of the injustice that would follow from the continuance of such an easement after the buildings had been destroyed. The buildings that had existed upon the property prior to the fire were five-story tenement houses. The law now in force requires for a five-story building, where the wall shall be more than fifty feet in height, that the party wall should be sixteen inches thick. The defendant has seen fit to rebuild the party wall twelve inches thick, and to build a two-story building. The plaintiff is thus compelled, in order to use this party wall, that he should build a house on his property less than fifty feet high, or to surrender to the defendant six inches of his land. It is clear that it was never intended by the parties, when the party wall was established, that the rights thus granted should produce that result. The requirements of a large and constantly changing city are such that restrictions in the use of property should be limited, rather than extended, by implication, and full effect can be given to the implied covenant creating the easement by restricting it to the buildings on the property at the time the easement was created."

The Court of Appeals in affirming the above case (121 N. Y. 386) said: " The rule which, with the cessation of the necessity for the existence of a right, abrogates the right itself, is supported by the reason of the thing, as well as by legal principles. The mutual easements existed by force of the situation at the time of the severance of the ownership of the two lots, and, with the change in that situation produced by the casual destruction of the buildings, the reason for their existence ceased. Thenceforth, they were inapplicable and the lands were free for the lawful uses of their owners. The easement was measured, in its extent and duration, by the existence of the necessity for it. When the necessity ceased, as it did by the destruction of the buildings and wall, the rights resulting from it ceased also."

The above case was cited with approval in *Bull* v. *Burton* (227 N. Y. 101) where it was held that when the state of things which results in a contract for a particular party wall ceases and the right to continue an obligation for a party wall as between the owners of the adjoining property is not provided for by contract, the easement terminates.

The courts in this and other jurisdictions have uniformly held that an easement in a party wall relates only to those buildings

existing upon the premises at the time of the grant, and does not extend to new and different buildings. There can be by implication no mutual easement of perpetual support applicable to future structures. When the necessity for the party wall ceases to exist, the right to such an easement is lost. Many of the cases cited by the respondent apply to entirely different facts. Contract obligations or other circumstances made such cases exceptions to the general rule.

The rule to be applied in this case is that upon the complete demolition of the party wall by the owners of the respective parcels of property, the easement was lost, because the necessity for it no longer existed.

The order denying the motion for judgment on the pleadings should be reversed, with twenty dollars costs and disbursements, and the motion granted, with ten dollars costs.

FINCH, P. J., MERRELL, O'MALLEY and SHERMAN, JJ., concur.

Order reversed, with twenty dollars costs and disbursements, and motion granted, with ten dollars costs.